## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

**Case No. _____**

| |
|---|
| **PATAGONIA, INC., a California corporation,** |
| **Plaintiff,** |
| **v.** |
| **PATAGONIA CANDLES LLC, a Florida limited liability company; COMERCIALIZADORA PATAGONIA CHILE LIMITADA, MICHELE MIQUELARENA, an individual; and ALEJANDRO MIQUELRENA, an individual,** |
| Defendants. |

### COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Patagonia, Inc. ("Patagonia" or "Plaintiff") files this Complaint for declaratory judgment establishing trademark infringement, false designation and unfair competition, and dilution based on infringing activities undertaken by Defendants Patagonia Candles LLC, Comercializadora Patagonia Chile Limitada, Michele Miquelarena, and Alejandro Miquelarena ("Defendants").  Defendants are making concrete plans to use Patagonia's mark to sell candles.  Patagonia opposed Defendants' application for a PATAGONIA Air Beauty trademark, but— before the actual harm begins—seeks a binding determination that use of the mark will infringe and dilute Patagonia's trademarks.

### THE PARTIES

1.     Patagonia is a California corporation headquartered at 259 West Santa Clara Street, Ventura, California 93001.  Patagonia has been designing, developing, and marketing

1

clothing for more than forty years under the PATAGONIA brand.  The PATAGONIA brand is famous around the world for innovative apparel designs, quality products, and environmental and corporate responsibility.

2. Patagonia is informed and believes that Defendants, Patagonia Candles LLC and Comercializadora Patagonia Chile Limitada are affiliated entities operating under the group name "Patagonia Candles" and are owned and managed by Defendants, Michele and Alejandro Miquelarena.  Defendants offer goods and services under various brands, including The Candle Shop – Air Beauty; Organic Spa; and Airmooding.

3. Comercializadora Patagonia Chile Limitada ("CPC") is a limited company organized under the laws of Chile with an address at Miraflores 113, Oficina 66, Comuna De Santiago, Chile.  CPC owns the pending U.S. trademark application for the PATAGONIA AIR BEAUTY and Design mark for goods in Classes 3 and 4 (Ser. No. 97/341,899).  CPC also owns E.U. trademark Registration No. 018553230) for the PATAGONIA AIR BEAUTY and Design mark for goods in Classes 3 and 4.  CPC owns and operates the website patagoniacandles.com and organicspa.com.ar—websites that Defendants use to market and sell their products and services.  CPC and the marks it uses are managed by Alejandro and Michele Miquelarena.

4. Patagonia Candles LLC is a Florida limited liability company with its principal place of business at 1835 NW 112th Ave. 174, Miami Florida, 33172.  Patagonia is informed and believes that Defendants formed Patagonia Candles LLC to operate the planned business under the mark PATAGONIA Air Beauty.  Based on Patagonia's investigation, Patagonia Candles and the marks it will use are also managed, operated and controlled by Alejandro and Michele Miquelarena, the same individuals who own and operate Defendant CPC.

5.      Michele Miquelarena is an individual with an address at 1835 NW 112th Ave. 174, Miami Florida, 33172.  Based on Patagonia's investigation, Ms. Miquelarena owns and co-founded multiple entities around the world that are part of the "Patagonia Candles" business group, including Defendants CPC and Patagonia Candles LLC.

6.      Alejandro Miquelarena is an individual with an address at 1835 NW 112th Ave. 174, Miami Florida, 33172.  Based on Patagonia's investigation, Mr. Miquelarena owns and co-founded multiple entities around the world that are part of the "Patagonia Candles" business group, including Defendants CPC and Patagonia Candles LLC.

## JURISDICTION AND VENUE

7.      This action is governed by the Declaratory Judgment Act, 28 U.S.C. § 2201 and seeks a declaratory judgment that Defendants' plans and preparation to use the PATAGONIA AIR BEAUTY brand in the United States infringe and dilute Patagonia's longstanding rights in its famous PATAGONIA marks.

8.      Patagonia's declaratory trademark claims arise under the Trademark Act of 1946 (the Lanham Act), as amended by the Trademark Dilution Revision Act of 2006 (15 U.S.C. §§ 1051, *et seq*.).  This Court has jurisdiction over such claims pursuant to 28 U.S.C. §§ 1338(a) and 1338(b) (trademark and unfair competition), 28 U.S.C. § 1331 (federal question), and 15 U.S.C. § 1121 (Lanham Act).  This Court has jurisdiction over the state law claims under 28 U.S.C. § 1367 (supplemental jurisdiction) and, as more than $100,000 is at stake, 28 U.S.C. § 1332 (diversity).

9.      This case arises out of Defendants' sworn intention to use Patagonia's trademark, their establishment of a United States company to carry out their plans and the imminent threat that Defendants' adoption of a PATAGONIA trademark would pose to

Patagonia's longstanding trademark rights.  Defendants have taken significant and concrete steps to launch their brand in the United States, including developing comprehensive business plans that detail their product assortment, production, distribution, marketing, and brand positioning strategies in the United States.

10.     This Court has personal jurisdiction over Defendant Patagonia Candles LLC because it is a Florida limited liability company, formed under the laws of Florida, with its principal place of business in this District.

11.     This Court has personal jurisdiction over Defendant Comercializadora Patagonia Chile Limitada because it is a foreign entity who has filed a trademark application with the United States Patent and Trademark Office, declaring under penalty of perjury that it intends to use the PATAGONIA AIR BEAUTY brand in the U.S.

12.     This Court has personal jurisdiction over Defendants Michele and Alejandro Miquelarena because they control and have made all decisions regarding the Defendants' choice of trademarks and are the owners and co-founders of Patagonia Candles LLC, a Florida company with its principal place of business in this District and Defendant CPC, the owner of the PATAGONIA AIR BEAUTY U.S. trademark application.

13.     Patagonia's request for declaratory judgment is ripe because Defendants have taken significant and concrete steps to launch the infringing PATAGONIGA AIR BEAUTY brand in the United States, including in this Judicial District.

14.     Venue is proper in this Court under 28 U.S.C. § 1391 because Defendant Patagonia Candles LLC is headquartered in this Judicial District and a substantial part of the events or omissions giving rise to the causes of action occurred in this Judicial District.

## FACTS COMMON TO ALL COUNTS FOR DECLARATORY RELIEF

**Patagonia's History**

15.     Patagonia was founded in the late 1960s to design and sell climbing clothes and
other active sportswear.  The company adopted the brand "PATAGONIA" to differentiate a
related business that designed and manufactured climbing gear and tools.  PATAGONIA was
chosen as the trademark to call to mind romantic visions of glaciers tumbling into fjords,
jagged windswept peaks, gauchos, and condors.  Since at least 1973, the PATAGONIA brand
has appeared on a multi-colored label inspired by a silhouette of the jagged peaks of the Mt.
Fitz Roy skyline (the "P-6 logo").

16.     In the fifty years since Patagonia's business started, the PATAGONIA brand
and its P-6 logo have become among the most identifiable brands in the world.  Patagonia's
products now include a wide range of men's, women's and children's apparel products and
equipment, including T shirts, hoodies, sweatshirts, and fleece, as well as technical products
designed for climbing, skiing and snowboarding, surfing, fly fishing, and trail running, which
are sold around the world.

17.     Over the years, Patagonia has been recognized and honored for its business
initiatives, including receiving the Sustainable Business Counsel's first "Lifetime Achievement
Award."  In 1996, with an increased awareness of the dangers of pesticide use and synthetic
fertilizers used in conventional cotton growing, Patagonia began the exclusive use of
organically grown cotton and has continued that use for more than twenty years.  It was a
founding member of the Fair Labor Association®, which is an independent multi-stakeholder
verification and training organization that audits apparel factories.  Additionally, since 1985
Patagonia has pledged 1% of sales to environmental groups to preserve and restore our natural

environment, donating more than $100 million to date.  In 2002, Patagonia's founder, Yvon Chouinard, along with others, created a non-profit called 1% For the Planet® to encourage other businesses to do the same.  Today, more than 1200 member companies have donated more than $150 million to more than 3300 nonprofits through 1% For the Planet®.

18.     In 2012, Patagonia became one of California's first registered Benefit Corporations ("Certified B Corporation"), ensuring Patagonia could codify into its corporate charter consideration of its workers, community, and the environment.  In 2016, Patagonia pledged to donate all revenue from sales on Black Friday, donating $10 million to environmental grantees in response to customers' purchases on that day.  In 2018, Patagonia pledged an additional $10 million in grants to environmental groups in response to recent tax cuts given to businesses.  Over the course of two weeks in December 2019, Patagonia matched another $10 million in donations to environmental and other grassroots organizations.  In 2022, Patagonia's owners donated their holdings in the company to support initiatives and innovations addressing climate change.

**Patagonia's Trademarks**

19.     Patagonia owns numerous registrations for its distinctive P-6 logo and PATAGONIA trademark, covering a wide-ranging assortment of products and services.  Among these are the following U.S. trademark registrations:

| Trademark | Reg. No. / Reg. Date | Goods | Date of First Use |
|---|---|---|---|
| **PATAGONIA** | 1189402 / Feb. 9, 1982 | Men's and Women's Clothing – Namely, Sweaters, Rugby Shirts, Walking Shorts, Trousers, Jackets, Mittens, Hoods, and Rainwear. | 08/1974 |

| Trademark | Reg. No. / Reg. Date | Goods | Date of First Use |
|---|---|---|---|
|  | 1294523 / Sept. 11, 1984 | Men's, Women's and Children's Clothing-Namely, Jackets, Pants, Vests, Gloves, Pullovers, Cardigans, Socks, Sweaters, Underwear, Shirts, Shorts, Skirts and Belts | 08/1974-1981 |
|  | 1775623 / June 8, 1993 | Luggage back packs, and all-purpose sports bags | 08/1988 |
| PATAGONIA | 1811334 / Dec. 14, 1993 | Luggage, Back Packs, Fanny Packs, and All-Purpose Sport Bags, Footwear, Ski Bags, and Ski Gloves. | 08/1990 |
| PATAGONIA | 2260188 / July 13, 1999 | Computerized on-line ordering activities in the field of clothing and accessories; providing information in the field of technical clothing and accessories for use in recreational, sporting, and leisure activities; providing information in the field of existing and evolving environmental issues. | 10/1995 |
| PATAGONIA.COM | 2392685 / Oct. 10, 2000 | On-line retail store and mail order services featuring technical clothing, footwear, and accessories; computer services in the nature of on-line information related to the environment and clothing. | 10/1995 |
| PATAGONIA | 2662619 / Dec. 17, 2002 | Retail store services featuring clothing, footwear, luggage, and a wide variety of sporting goods and accessories. | 06/1986 |

| Trademark | Reg. No. / Reg. Date | Goods | Date of First Use |
|---|---|---|---|
| **PATAGONIA** | 5561006 / Sept. 11, 2018 | Stickers; paper banners; fiction and non-fiction books on a variety of topics; posters; non-magnetically encoded gift cards; photographs | 12/1991 |

*See* Exhibit A.  These registrations for the PATAGONIA mark and logos are in full force and effect.  The registrations have become incontestable under 15 U.S.C. § 1065.

20.     Collectively, these marks, Patagonia's other registered trademarks, and its common law marks are referred to as the "PATAGONIA trademarks."

21.     The PATAGONIA trademarks are distinctive, arbitrary and fanciful, entitled to the broadest scope of protection, and certain of the PATAGONIA trademarks are registered worldwide.

22.     For many years prior to the events giving rise to this Complaint and continuing to the present, Patagonia annually has spent enormous amounts of time, money, and effort advertising and promoting the products on which its PATAGONIA trademarks are used. PATAGONIA branded products are advertised in a variety of contexts and media, including in print and on the Internet.  In addition to advertising by Patagonia, the PATAGONIA trademarks are also advertised and promoted and presented at point of sale by numerous retailers. Consumers, accordingly, are exposed to the PATAGONIA trademarks in a wide range of shopping and post-sale contexts.

23.     Patagonia has sold its PATAGONIA branded products all over the world, including throughout the United States and Florida.  Through its promotion and investment in its brand and extensive sales, publicity, awards, and leadership in sustainable sourcing practices and environmental advocacy, Patagonia has acquired enormous goodwill in its PATAGONIA

trademarks.  The PATAGONIA trademarks are famous within the meaning of the Trademark

Dilution Revision Act, enjoy strong consumer recognition, and are recognized around the world

and throughout the United States by consumers as signifying high-quality products made by a

responsible company.

**Defendants' Planned Expansion In the U.S. Under the Infringing PATAGONIA AIR**

**BEAUTY Mark**

24.    Patagonia is informed and believes that Defendants are part of a business group

called Patagonia Candles which has over 150 employees across seven countries.  Defendants

have been manufacturing candles for over twenty-five years under the leadership of Ms.

Miquelarena and Mr. Miquelarena.  Defendants started operating as candle manufacturers in

1998 in Argentina. Since then, Defendants have expanded their operations—launching new

brands that offer a variety of products in multiple geographic markets.

25.    Defendants have used three principal brands associated with the Patagonia

Candles company: (1) The Candle Shop – Air Beauty; (2) Organic Spa; and (3) Airmooding,

their business-to-business brand.  Under these brands, Defendants offer a large assortment of

products and services, including candles, diffusers, room refreshers, essential oils, incense, and

soap.  Recently, however, Defendants have announced they will use PATAGONIA Air Beauty,

first in Europe, and then the United States, as a principal brand.

26.    Defendants have expanded their geographic presence from Argentina to Chile,

Uruguay, Peru, Colombia, Dominican Republic, and Spain. Defendants have physical retail

outlets across many of these countries including twenty locations in Argentina, five locations in

Colombia, three locations in Peru, one location in Spain, three locations in Chile, and one

location in Uruguay.  Below are images showing Defendants' The Candle Shop – Air Beauty stores.



27.     In addition to physical retail outlets, Defendants offer and sell their products on their thecandleshop.com websites, along with third-party websites.  Defendants have been advertising and selling products online since at least 2003.

28.     Defendants Alejandro and Michele Miquelarena have significant experience in creating brands used around the world.  Based on its investigation, Patagonia understands that Defendants expand into new countries by creating a local entity in each country, which then owns and operates a website dedicated to that country.

29.     Starting in 2021, Defendants began developing plans to expand their business globally using a new brand PATAGONIA AIR BEAUTY ("PATAGONIA AIR BEAUTY Mark").

30.     Defendants have taken substantial steps to prepare for the global launch of PATAGONIA AIR BEAUTY.  On January 6, 2022, Defendant CPC obtained a trademark

registration with the European Union Intellectual Property Office (Reg. No. 018553230) for the

PATAGONIA AIR BEAUTY design mark for the following goods:

> **Class 03**: Soap, Deodorant soap, Anti-perspirant soap; Cakes of toilet soap;
> Perfumes, Extracts of flowers (perfumes); Aromatics for fragrances, Oils for toilet
> purposes, Ethereal essences; Incense; Cosmetics; Waxes; Decorative transfers for
> cosmetic purposes; Bath oil.
>
> **Class 04**: Candles, Wicks for candles, Illuminating wax, Nightlights (candles);
> Combustible briquettes.

31.     Shortly thereafter, on March 31, 2022, Defendant CPC filed a U.S. trademark

application, on an intent-to-use basis, with the United States Patent and Trademark Office

("USPTO"), Serial No. 97/341,899 for the same PATAGONIA AIR BEAUTY design mark for

the following goods:

> **Class 03**: Non-medicated cosmetic soap, Deodorant soap, Anti-perspirant soap;
> Cakes of toilet soap; Perfumes, Extracts of flowers being perfumes; Aromatics for
> fragrances, namely, aromatic oils, Oils for toilet purposes, Ethereal essences;
> Incense; Cosmetics; Decorative transfers for cosmetic purposes; Bath oil; and
>
> **Class 04**: Candles; Wicks for candles; Illuminating wax, namely, candles;
> Candles for night lights; Combustible briquettes.

(the "U.S. trademark application").  A copy of Defendant CPC's trademark filing is attached as

**Exhibit B**.

32.     After it registered PATAGONIA AIR BEAUTY in the EU, Defendants started

preparations in the United States.  These include:(i) defining a brand identity centered on

sustainability and ethical production practices (ii) leveraging Defendants' experience as candle

manufacturers; (iii) designing and selecting a logo that reflects the PATAGONIA AIR BEAUTY brand identity; (iv) defining a target U.S. audience; (v) identifying U.S. competitors; (vi) positioning the PATAGONIA AIR BEAUTY brand to outline opportunities for differentiation; (vii) applying to register the PATAGONIA AIR BEAUTY Mark in the U.S.; (viii) forming a U.S. entity;  (ix) selecting a product assortment with mockups of the products and packaging bearing the PATAGONIA AIR BEAUTY Mark; (x) preparing comprehensive product distribution and marketing strategies; and (xi) obtaining Certified B Corporation status to be able to market sustainable and ethical practices immediately upon launch.  Defendants have targeted Europe and the U.S. as their principal geographic markets for PATAGONIA AIR BEAUTY, though they applied for and were refused a trademark registration in Argentina.

33.     When Defendant CPC filed its U.S. trademark application, three years ago now, it submitted a sworn statement that it had a bona fide intent to use the PATAGONIA AIR BEAUTY Mark in U.S. commerce as of the application filing date on or in connection with the goods identified in the application.

34.     Patagonia timely opposed the U.S. trademark application with the Trademark Trial and Appeal Board ("TTAB") Opposition Proceeding No. 91289799 ("Opposition Proceeding").  Patagonia conducted discovery in the Opposition Proceeding.  The Opposition Proceeding is pending.

35.     Patagonia is informed and believes that Defendants are taking concrete steps to expand in the U.S. under the PATAGONIA AIR BEAUTY brand—as confirmed by Defendant CPC's verified discovery responses provided in the Opposition Proceeding.

36.     Defendants' launch plans outline that Defendants, mirroring Patagonia's brand positioning, intend to market a commitment to sustainable and environmental-friendly practices

to attract U.S. consumers to the PATAGONIA AIR BEAUTY brand and differentiate the brand from other competitors.

37. Defendants have already taken significant steps to implement this strategy. Defendants applied and obtained Certified B Corporation status in February 2024. According to Defendants' Certified B Corporation documentation, Defendants operate in the United States. *See* https://www.bcorporation.net/en-us/find-a-b-corp/company/patagonia-candles-srl/.



38. Defendants' business plans indicate that they intend initially to offer three to five flagship candles, diffusers, essential oil, and room sprays under the PATAGONIA AIR BEAUTY Mark. These are all products that Defendants currently manufacture and offer—and have done so for decades.

39.     Defendants do not need to take any further steps to identify new suppliers or manufactures for the products they intend to sell in the U.S. as they plan to use their current regional suppliers in Argentina and Chile to source the materials for products they will manufacture and then sell into the U.S.

40.     As stated in Defendants' business plan, Defendants will transport the products to logistical partners to store and ship the products to the U.S.  Once the products are in the U.S., Defendants will sell the products direct-to-consumers and business-to-business through their own e-commerce platforms and social media accounts.

41.     Defendants have created staged marketing plans to introduce the PATAGONIA AIR BEAUTY brand in the U.S.  As a first step to introducing the brand in the U.S., Defendants plan to leverage their existing social media accounts to tell their brand story; run advertising campaigns on those same social media platforms; collaborate with social media influencers in the wellness, interior design, sustainability, and luxury sectors; and create displays and host events in selected stores.  If they follow the pattern they use in other countries, the e-commerce platform, website and social media presence ultimately will be operated by the U.S. subsidiary and dedicated to the United States.

42.     Supporting their plans to quickly and effectively introduce and market their products to U.S. consumers, Defendants' Instagram page currently has almost 80,000 followers and its Facebook page has about 23,000 followers.

43.     In addition to targeting U.S. consumers, Defendants' marketing and go-to market plans reflect an intention to enter the business-to-business fragrance market in the United States. They have identified U.S.-based trade shows, including ScentWorld Expo which is held in this

Judicial District—as key avenues to promote their PATAGONIA AIR BEAUTY brand to industry professionals and potential business partners.

44.     Defendants have done an extensive analysis of the brands that they consider to be their U.S. competitors in preparation for their launch.  This includes identifying specific competitors and identifying their strengths and using these insights to define and distinguish the PATAGONIA AIR BEAUTY brand.

45.     Given all these plans and preparations to enter the U.S. market, along with their sworn intention to do so, Patagonia fears that Defendants will imminently launch their products in the U.S. market under a PATAGONIA brand.

46.     Defendants are currently marketing and selling products under the "Air Beauty" brand.  They have selected a logo for the PATAGONIA AIR BEAUTY Mark and can easily begin using the infringing brand by simply modifying existing labels—further underscoring the immediacy with which infringement could occur.

47.     Defendants' actions go beyond mere intent; they are actively engaged in a course of conduct aimed at manufacturing, promoting, and distributing infringing products in the United States.

48.     Defendants' PATAGONIA AIR BEAUTY Mark is confusingly similar to Patagonia's famous PATAGONIA trademarks.  Defendants intend to use the mark in connection with goods that are related and complementary to the goods offered by Patagonia.  Defendants' planned brand identity mirrors Patagonia's longstanding commitment to protection of the environment and responsible corporate practice.  Defendants' use of the PATAGONIA AIR BEAUTY Mark will likely cause confusion among consumers regarding the source of

Defendants' products, or whether Plaintiff has sponsored, licensed, authorized, or is somehow affiliated with Defendants' products.

49.     After Defendant CPC filed its U.S. trademark application, Patagonia wrote to Defendants insisting that Defendants' intended use of the PATAGONIA AIR BEAUTY Mark copies, infringes, and dilutes Patagonia's famous PATAGONIA trademarks. Patagonia requested that Defendants abandon the U.S. trademark application and agree not to use the mark. Defendants refused to withdraw their pending trademark application or to provide assurances that they will stop their plans to infiltrate the U.S. market with the challenged mark.  Patagonia, accordingly, initiated the Opposition Proceeding.

50.     Throughout the Opposition proceedings, Defendants have steadfastly refused to stop their march to using the infringing PATAGONIA AIR BEAUTY Mark in the United States.

51.     Given the advanced stage of Defendants' preparations and their refusal to respect Patagonia's famous marks, Patagonia seeks relief now, before the brand physically enters the U.S. market.  The threat of imminent harm is real and substantial, and Patagonia is entitled to act now to protect its longstanding rights in its well-known PATAGONIA trademarks.

## FIRST CLAIM FOR RELIEF

### (Declaration of Federal Trademark Infringement – 15 U.S.C. §§ 1114-1117)

52.     Plaintiff realleges and incorporates by reference each of the allegations contained elsewhere in this Complaint.

53.     Patagonia's federally registered PATAGONIA trademarks are valid and enforceable and were so long before Defendants filed its U.S. trademark application or began making concrete plans to use the mark in the United States.

54.     Defendants have used or at least have concrete plans to use the PATAGONIA AIR BEAUTY Mark in connection with the sale, offering for sale, distribution, or advertising of products that are related and complementary to products offered and sold by Patagonia.  The PATAGONIA AIR BEAUTY Mark is confusingly similar to Patagonia's PATAGONIA trademarks.

55.     Defendants' use of the mark in the United States is likely to cause consumer confusion and therefore infringes Patagonia's federally registered PATAGONIA trademarks in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

56.     These acts of trademark infringement have been committed with the intent to cause confusion, mistake, or deception, and are in violation of 15 U.S.C. § 1114.

57.     Patagonia is informed and believes that Patagonia Candles' and CPC's acts were done with full knowledge of the Miquelarenas, who directed and controlled such acts.

58.     Plaintiff requests that the Court declare that Defendants' use or intended use of the PATAGONIA AIR BEAUTY Mark infringes Patagonia's trademark rights.

59.      Patagonia is entitled to injunctive relief pursuant to 15 U.S.C. §§ 1116(a) and 1125(c) that requires Defendants to stop all use and preparation to use the PATAGONIA AIR BEAUTY Mark and any other mark or design confusingly similar to the famous PATAGONIA trademark.

60.     Patagonia also is entitled to have the Court direct the USPTO that the U.S. trademark application be refused and that the mark shall not be registered.

## SECOND CLAIM FOR RELIEF

## (Declaration of Federal Unfair Competition and False Designation of Origin – 15 U.S.C. § 1125(a))

61.     Plaintiff realleges and incorporates by reference each of the allegations contained elsewhere in this Complaint.

62.     Defendants' have used or made concrete plans to use symbols or devices that falsely describe the PATAGONIA AIR BEAUTY-branded products, within the meaning of 15 U.S.C. § 1125(a)(1).  Defendants' conduct is likely to cause confusion, mistake, or deception by or in the public as to the source of Defendants' goods, or as to Patagonia's affiliation, connection, association, origin, sponsorship, or approval of Defendants or their PATAGONIA AIR BEAUTY-branded products in violation of 15 U.S.C. § 1125(a)(1).

63.     Patagonia is informed and believes that Patagonia Candles' and CPC's acts were done with full knowledge of the Miquelarenas, who directed and controlled such acts.

64.     Plaintiff requests that the Court declare that Defendants' use or intended use of the PATAGONIA AIR BEAUTY Mark constitutes unfair competition in violation of Patagonia's rights under 15 U.S.C. § 1125(a).

65.     Plaintiff is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a) that requires Defendants to stop its use or continued preparation to use the PATAGONIA AIR BEAUTY Mark and any other mark or design similar to Plaintiff's trademarks.

66.     Patagonia also is entitled to have the Court direct the USPTO that the U.S. trademark application be refused and that the mark shall not be registered.

### THIRD CLAIM FOR RELIEF

### (Declaration of Federal Dilution of Famous Mark – 15 U.S.C. § 1125(c))

67.     Plaintiff realleges and incorporates by reference each of the allegations contained elsewhere in this Complaint.

68.     Patagonia's PATAGONIA trademark is distinctive and famous within the meaning of the Trademark Dilution Revision Act of 2006, 15 U.S.C. § 1125(c), and was famous prior to Defendants' adoption of the confusingly similar PATAGONIA AIR BEAUTY Mark.

69.     Defendants' use or planned use of the mark in the United States is likely to blur and erode the distinctiveness of Patagonia's famous trademark among consumers in the United States and therefore dilutes Patagonia's famous federally registered PATAGONIA trademarks in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1125(c)(2)(B).

70.     Patagonia is informed and believes that Patagonia Candles' and CPC's acts were done with full knowledge of the Miquelarenas, who directed and controlled such acts.

71.     Plaintiff requests that the Court declare that Defendants' use or intended use of the PATAGONIA AIR BEAUTY Mark will dilute Patagonia's famous PATAGONIA trademarks in violation of Patagonia's rights under 15 U.S.C. § 1125(c).

72.     Patagonia is entitled to injunctive relief pursuant to 15 U.S.C. §§ 1116(a) and 1125(c) that requires Defendants to stop all use and preparation to use the PATAGONIA AIR BEAUTY Mark and any other mark or design similar to the famous PATAGONIA trademark.

73.     Patagonia also is entitled to have the Court direct the USPTO that the U.S. trademark application be refused and that the mark shall not be registered.

## FOURTH CLAIM FOR RELIEF

### (Declaration of Violation of FDUTPA)

74.     Plaintiff realleges and incorporates by reference each of the allegations contained elsewhere in this Complaint.

75.     Defendants pass off or intend to pass off their products as products offered by Patagonia, causing a likelihood of confusion or misunderstanding as to the source, sponsorship, or approval of the infringing products causing a likelihood of confusion as to Defendants' affiliation, connection, or association with Patagonia, and otherwise irreparably damaging Patagonia and harming consumers and the public.

76.     Defendants' unauthorized intention to use the PATAGONIA AIR BEAUTY Mark to promote, market, offer for sale and sell Defendants' products constitutes deceptive and unfair trade practices in violation of FDUTPA Fla. Stat. § 501.201 *et seq*.

77.     Patagonia is informed and believes that Patagonia Candles' and CPC's acts were done with full knowledge of the Miquelarenas, who directed and controlled such acts.

78.     Plaintiff requests that the Court declare that Defendants' use or intended use of the PATAGONIA AIR BEAUTY Mark constitutes deceptive and unfair trade practices in violation of Patagonia's rights under FDUTPA Fla. Stat. § 501.201 *et seq*.

79.     Patagonia is entitled to injunctive relief pursuant to FDUTPA Fla. Stat. § 501.201 *et seq*. that requires Defendants to stop all use and preparation to use the PATAGONIA AIR BEAUTY Mark and any other mark or design similar to the famous PATAGONIA trademark.

80.     Patagonia also is entitled to have the Court direct the USPTO that the U.S. trademark application be refused and that the mark shall not be registered.

## FIFTH CLAIM FOR RELIEF

### (Declaration of Violation of Florida Trademark Dilution and Injury to Business Reputation)

81.     Plaintiff realleges and incorporates by reference each of the allegations contained elsewhere in this Complaint.

82.     Plaintiff has extensively and continuously promoted and used the PATAGONIA trademarks in the United States, including Florida, and throughout the world, and the PATAGONIA trademarks have become distinctive, famous and well-known symbols of Patagonia in the United States, including Florida, and throughout the world.

83.     Defendants' unauthorized use or planned use of the PATAGONIA trademarks dilutes and is likely to dilute the distinctiveness of the PATAGONIA trademarks by eroding the public's exclusive identification of these marks with Patagonia, and tarnishing and degrading the positive associations and prestigious connotations of said marks.

84.     Patagonia is informed and believes that Patagonia Candles' and CPC's acts were done with full knowledge of the Miquelarenas, who directed and controlled such acts.

85.     Defendants are causing or will start causing irreparable injury to Patagonia's goodwill and business reputation, and dilution of the distinctiveness and value of the PATAGONIA trademarks in violation of Florida law, Fla. Stat. § 495.151.

86.     Patagonia is entitled to injunctive relief, damages and costs, as well as, if appropriate, enhanced damages and reasonable attorneys' fees.

## SIXTH CLAIM FOR RELIEF

### (Declaration of Common Law Infringement and Unfair Competition)

87.     Plaintiff realleges and incorporates by reference each of the allegations contained elsewhere in this Complaint.

88.     Patagonia owns valid and protectable common law rights in the PATAGONIA trademarks.

89.     Defendants' use and plans to use the PATAGONIA AIR BEAUTY mark are likely to cause confusion, to cause mistake, or to deceive consumers as to the source of goods and services offered by Defendants, or as to Patagonia's affiliation, connection, association, sponsorship, or approval of Defendants or such goods, and consequently infringe Patagonia's common law PATAGONIA trademarks.

90.     Defendants' use and plans to use the PATAGONIA AIR BEAUTY mark infringe Patagonia's PATAGONIA common law trademarks and have been made with Defendants' knowledge and intention to cause confusion, mistake, or deception.

91.     Unless restrained and enjoined, the conduct of Defendants will further impair the value of the PATAGONIA trademarks and Patagonia's business reputation and goodwill. Patagonia has no adequate remedy at law.

92.     Patagonia is informed and believes that Patagonia Candles' and CPC's acts were done with full knowledge of the Miquelarenas, who directed and controlled such acts.

93.     Plaintiff requests that the Court declare that Defendants' use or intended use of the PATAGONIA AIR BEAUTY Mark constitutes unfair competition and infringement in violation of Patagonia's rights under common law.

94.     Patagonia is entitled to a declaratory judgment of infringement that prohibits Defendants from using the PATAGONIA AIR BEAUTY Mark, and any other mark or design similar to the PATAGONIA trademarks.

95.     Patagonia also is entitled to have the Court direct the USPTO that the U.S. trademark application be refused and that the mark shall not be registered.

**SEVENTH CLAIM FOR RELIEF**

**(Declaration of Non-Registrability of Application Ser. No. 97/341,899)**

96.     Plaintiff realleges and incorporates by reference each of the allegations contained elsewhere in this Complaint.

97.     Defendants' plans to use the PATAGONIA AIR BEAUTY Mark to advertise, offer, and sell goods that are related to and complementary of Patagonia's goods are likely to result in confusion, mistake, or deception as to the source of the goods, or the false impression that Plaintiff has sponsored, licensed or approved Defendants or their products.

98.     Defendants' intended use of the PATAGONIA AIR BEAUTY Mark to advertise, offer, and sell goods that are related to and complementary of Patagonia's goods is likely to dilute Patagonia's famous and distinctive PATAGONIA trademark.

99.     Patagonia is informed and believes that CPC's acts were done with full knowledge of the Miquelarenas, who directed and controlled such acts.

100.    Defendant CPC's U.S. trademark application should be refused pursuant to 15 U.S.C. § 1052(d) and § 1125(c).

101.    Patagonia also is entitled to have the Court direct the USPTO that the U.S. trademark application be refused and that the mark shall not be registered.

**PRAYER FOR JUDGMENT**

Based on these allegations, all of which will be proven in due course, Patagonia prays that this Court grant the following relief:

1.      Declare and adjudge that Defendants have infringed the PATAGONIA trademarks in violation of Patagonia's rights under 15 U.S.C. § 1114;

2. Declare and adjudge that Defendants have infringed the PATAGONIA trademarks in violation of Florida statutory law;

3. Declare and adjudge that Defendants have infringed Patagonia's common law rights in the PATAGONIA trademarks;

4. Declare and adjudge that Defendants are likely to dilute Patagonia's famous PATAGONIA trademarks in violation of Patagonia's rights under 15 U.S.C. § 1125(c);

5. Declare and adjudge that Defendants are likely to dilute Patagonia's famous PATAGONIA trademarks in violation of Patagonia's rights under Florida statutory law;

6. Declare that, if the U.S. trademark application for PATAGONIA AIR BEAUTY (App. Ser. No. 97/341,899) were allowed to register for the goods Defendants intend to offer under the PATAGONIA AIR BEAUTY Mark, it will infringe Patagonia's registered trademarks;

7. Declare that, if the U.S. trademark application for PATAGONIA AIR BEAUTY (App. Ser. No. 97/341,899) were allowed to register for the goods Defendants intend to offer under PATAGONIA AIR BEAUTY Mark, it will dilute Patagonia's registered trademarks;

8. Declare that Defendants and their agents, employees, attorneys, successors, assigns, affiliates, and joint venturers, and any person(s) in active concert or participation with them, and/or any person(s) acting for, with, by, through or under them, be enjoined and restrained during the pendency of this action and thereafter permanently from:

    a. Manufacturing, producing, sourcing, importing, selling, offering for sale, distributing, advertising, or promoting any goods or services that display any words or symbols that so resemble the PATAGONIA Marks as to be likely to cause confusion, mistake, or deception, on or in connection with any product that is not authorized by or for Patagonia, including, without

limitation, any product or service that bears the PATAGONIA AIR

BEAUTY Mark, or any other approximation of Patagonia's trademarks;

b.     Using any word, term, name, symbol, device, or combination that causes

or is likely to cause confusion, mistake, or deception as to the affiliation or

association of Defendants or their offerings with Patagonia, or as to the

origin of Defendants' offerings, or any false designation of origin, false or

misleading description or representation of fact, or any false or misleading

advertising, or likely dilution of the PATAGONIA Mark;

c.     Further infringing the rights of Patagonia in and to its PATAGONIA

Marks, or otherwise damaging Patagonia's goodwill or business

reputation;

d.     Diluting or further diluting the famous PATAGONIA trademarks;

e.     Otherwise competing unfairly with Patagonia in any manner; and

f.     Continuing to perform in any manner whatsoever any of the unlawful acts

described in this Complaint;

9.     Order that registration of U.S. Trademark Application Ser. No. 97/341,899 must

be refused, and/or that any registration resulting from the application must be cancelled, and

address its certified order to the USPTO, Office of the Solicitor, Mail Stop 8, Director of the

USPTO, P.O. Box 1450, Alexandria, Virginia 22313;

10.     Declare that Defendants are prohibited from applying to register any trademark or

service mark which is likely to be confused with, or that dilutes the distinctive quality of,

Patagonia's famous PATAGONIA trademarks;

11.     Declare that Patagonia be awarded its costs and disbursements incurred in connection with this action, including Patagonia's reasonable attorneys' fees and investigative expenses; and

12.     Declare that all such other relief be awarded to Patagonia as this Court deems just and proper.

Dated November 6, 2025                    Respectfully submitted,


*Of Counsel*:                             /s/Jaime Rich Vining
                                          David K. Friedland (FL Bar No. 833479)
Gregory S. Gilchrist (*pro hac vice* to be filed)   Jaime Rich Vining (FL Bar No. 30932)
Ryan Bricker (*pro hac vice* to be filed)    FRIEDLAND VINING, P.A.
Sophy Tabandeh (*pro hac vice* to be filed)  6619 South Dixie Highway, Box 157
Kourtney Speer (*pro hac vice* to be filed)  Miami, FL 33143
VERSO LAW GROUP LLP                       Tel: (305) 777-1721
565 Commercial Street, 4th Fl.            Fax: (305) 456-4922
San Francisco, California 941111
Tel: (415) 534-0495